UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MELISSA ANN SHERLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 10-11703-JGD |
| | ) | |
| VINCENT STANCATO, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OF DECISION AND ORDER ON DEFENDANT VINCENT STANCATO'S MOTION TO DISMISS

April 22, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiff Melissa Ann Sherlock ("Sherlock") has brought this action pro se against Vincent Stancato ("Stancato"), a Boston, Massachusetts police officer, claiming that Stancato violated her rights under 42 U.S.C. § 1983 and state law during four separate encounters between the parties in the Chinatown section of Boston. By her Amended Complaint,[1] Sherlock has asserted claims against Stancato for false arrest, excessive force, assault, slander, mental anguish and deprivation of property.

---

[1] As set forth in this court's Scheduling Order and Order on Defendant's Motion to Dismiss (Docket No. 12), this court deemed the plaintiff's original complaint to be amended by her "Response in Opposition to Motion to Dismiss" ("Response"). Thus, the Amended Complaint consists of both the original complaint (Docket No. 1-1) and the plaintiff's Response. (Docket No. 6).

The matter is presently before the court on Stancato's partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Nos. 4 and 13).[2] By his motion, the defendant is seeking the dismissal of all claims arising from the first three encounters between the parties on the grounds that they are barred by the statute of limitations and fail to state a claim. In addition, the defendant is seeking the dismissal of Sherlock's claim for unlawful deprivation of her property on the grounds that the plaintiff's factual allegations are inadequate to support such a claim.

For all the reasons detailed herein, the defendant's partial motion to dismiss is ALLOWED IN PART and DENIED IN PART. Because Sherlock has failed to state a claim based on the circumstances surrounding the first three encounters between the parties, any causes of action arising out of those incidents shall be dismissed. However, Sherlock may pursue her claim for deprivation of property in addition to the remaining claims arising out of the fourth encounter between the parties on about March 1, 2007.

---

[2] On October 14, 2010, the defendant filed "Defendant, Vincent Stancato's Motion to Dismiss Plaintiff's Complaint" (Docket No. 4) in which he sought dismissal of all of the claims set forth in the plaintiff's original complaint. Subsequently, this court allowed the plaintiff to amend her complaint to allege additional claims arising out of the fourth encounter between the parties. This court also allowed Stancato to file a new motion to dismiss addressing the newly alleged claims and incorporating by reference any of the relevant arguments made in support of his first motion to dismiss. (See Docket No. 12). On December 17, 2010, Stancato filed "Defendant, Vincent Stancato's Partial Motion to Dismiss Plaintiff's Amended Complaint" (Docket No. 13), which specifically incorporates certain of the arguments made in the original motion to dismiss.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Where, as here, the plaintiff is proceeding pro se, the court must construe her allegations liberally. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 251 (1976) (a pro se complaint, however inartfully pleaded, must be liberally construed). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).[3] Applying these standards to the instant case, the relevant facts are as follows.[4]

---

[3] Pursuant to the relevant standard, this court has considered the documents attached as Exhibits A through D to the Memorandum of Law in Support of Defendant's Motion to Dismiss (Docket No. 5) ("Def. Ex. __"), as well as the documents attached as Exhibits A through D to the Memorandum of Law in Support of Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 14) ("Def. Supp. Ex. __").

[4] Unless otherwise indicated, all of the facts described herein are set forth in the plaintiff's original complaint (Docket No. 1-1), as amended by Sherlock's "Response in Opposition to Motion to Dismiss" (Docket No. 6).

Sherlock alleges that she has had a history of "run-ins" with the police. Her claims in this action arise out of four separate encounters, or "run-ins," that Sherlock had with the defendant in Chinatown in about February and March of 2007. During the first encounter between the parties, Stancato allegedly told Sherlock, "I'm watching you ya know," and Sherlock replied that she was watching him too. During the second encounter, Stancato allegedly pushed Sherlock from behind and told her not to come back to Chinatown. The plaintiff has alleged no further details concerning the first two encounters.

The third encounter between the parties took place on February 12, 2007. (See Def. Supp. Ex. C at 2). On that occasion, Sherlock was drinking in public, and Stancato arrested her for public drinking and disorderly conduct.[5] (See Def. Supp. Exs. B and C; Am. Compl.). The plaintiff was arraigned in state court on February 13, 2007, and released on personal recognizance. (Def. Supp. Ex. C at 12-13). Ultimately, the charges against her were dismissed. (Id. at 2).

Sherlock claims that the parties' final encounter took place on about March 1, 2007. At that time, the plaintiff was homeless and sleeping outside. She alleges that she was attempting to enter a Chinese restaurant in order to get some food when Stancato suddenly appeared, put his hand on her shoulder and asked the plaintiff what she thought she was doing. When Sherlock asked him what he meant and told him she was getting

---

[5] Sherlock admitted that she had been drinking in public both in her Amended Complaint and at oral argument.

something to eat, the defendant allegedly replied, "Not here you['re] not[.]" According to Sherlock, Stancato's statement led to an argument between the parties as to whether the plaintiff could enter the restaurant. Ultimately, Stancato placed Sherlock under arrest and led her across the street to his cruiser. Sherlock claims that during the course of the arrest, the defendant slammed her face into the trunk of his vehicle, "laid [her] face down in the street and put his right boot in the small of her back and kept [her] lying down for at least five minutes." She further claims that the incident caused her a great deal of mental and emotional anguish.

Following the alleged assault, Stancato put the plaintiff into his cruiser and took her to the police station. On March 2, 2007, Sherlock was arraigned in state court on charges of assault and battery, trespass, disturbing the peace, assault and battery with a dangerous weapon, assault and battery on a public employee, and resisting arrest. (Def. Supp. Ex. D at 2, 19). However, during the course of the criminal proceedings, the court found Sherlock incompetent to stand trial. (Id. at 7). She was committed to a mental health center and the charges against her ultimately were dismissed. (Id. at 2, 7).

Sherlock claims that the police have retained approximately $200 worth of her possessions, including jewelry, cash, clothing and makeup. Although her allegations are somewhat vague, they indicate that her property was taken at the time of her March 2007 arrest.

5

On February 26, 2010, Sherlock filed suit against Stancato in Massachusetts Superior Court. (Def. Ex. D). On October 5, 2010, the defendant removed the case to this court on the basis of federal question jurisdiction. (Docket No. 1).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

#### A. Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support "'a plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations

6

omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (quoting Ashcroft, 129 S. Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.'" Id. (quoting Ashcroft, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

### B. Statute of Limitations

Stancato has moved to dismiss all of the claims arising out of the first three encounters with Sherlock on the grounds that those claims are barred by the applicable statutes of limitations. Although Sherlock failed to file this action until after the applicable statutes of limitations had run, the record raises an issue of fact as to whether equitable tolling excuses Sherlock's tardiness because she was incapacitated by mental illness throughout the limitations period. Accordingly, the defendant has not shown that the plaintiff's claims should be dismissed on the basis of untimeliness.

#### i. Limitations Period for Claims Under 42 U.S.C. § 1983

By her complaint, Sherlock is seeking to hold Stancato liable for violations of her constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). Because "Section 1983 does not contain a built-in statute of limitations[,]" "a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period

7

governing personal injury causes of action." Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Under Massachusetts law, the limitations period for personal injury is three years. See id.; Mass. Gen. Laws ch. 260, § 2A. Accordingly, the three-year period applies to any claim that Stancato's conduct deprived Sherlock of her constitutional rights in violation of Section 1983.

While the length of the statute of limitations is based on state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007). Ordinarily, "[a] cause of action [brought pursuant to Section 1983] accrues when a plaintiff knew, or should have known, of the wrongful act or acts alleged in the complaint." Connell v. Bd. of Selectmen of Town of Harwich, 215 F.3d 1311, 2000 WL 739719, at *2 (1st Cir. June 2, 2000) (unpub. op.). See also Villanueva-Mendez v. Nieves-Vazquez, 440 F.3d 11, 15 (1st Cir. 2006) ("Accrual commences, for federal law purposes, when a plaintiff knows or has reason to know, of the discriminatory act that underpins his cause of action") (quotations and citations omitted)). For false arrest claims arising under Section 1983, the statute of limitations begins to run at the time legal process is initiated. See Wallace, 549 U.S. at 391, 127 S. Ct. at 1097 (concluding that statute of limitations on Section 1983 false arrest claim "commenced to run when [arrestee] appeared before the examining magistrate and was bound over for trial").

To the extent Sherlock is asserting a Section 1983 false arrest claim based on her February 12, 2007 arrest for public drinking and disorderly conduct, that claim accrued,

8

at the latest, on February 13, 2007, when Sherlock was arraigned in state court. Because the plaintiff did not file her lawsuit until February 26, 2010, nearly two weeks after the three year statute of limitations expired, her claims are untimely unless equitable tolling principles apply.

This court reaches the same conclusion with respect to the first two encounters between the parties. Although Sherlock does not describe the precise dates when those incidents occurred, she has alleged that they preceded her February 12, 2007 arrest, and therefore occurred more than three years prior to the filing of her lawsuit. In each instance, Sherlock knew of or had reason to know of the allegedly wrongful act at the time it occurred. Therefore, any Section 1983 claim arising out of the first two encounters would be time-barred in the absence of equitable tolling.

### ii. Limitations Period for State Law Claims

Sherlock also has alleged state law claims against Stancato for assault, mental anguish or emotional distress, and slander. Those claims are subject to a three-year statute of limitations as well. See Mass. Gen. Laws ch. 260, § 4 ("actions for assault and battery, . . . slander . . . shall be commenced only within three years next after the cause of action accrues"); Flynn v. Associated Press, 401 Mass. 776, 782, 519 N.E.2d 1304, 1308 (1988) (claims for emotional distress "are governed by G.L. c. 260, § 2A, the general three-year statute of limitations for tort actions"). Moreover, such claims generally accrue "when the plaintiff is injured" unless the circumstances are such that "the plaintiff did not know or could not reasonably have known that he or she may have

9

been harmed by the conduct of another. Koe v. Mercer, 450 Mass. 97, 101, 876 N.E. 2d 831, 836 (2007). In such instances, "the statute of limitations starts when the plaintiff discovers, or reasonably should have discovered 'that [the plaintiff] has been harmed or may have been harmed by the defendant's conduct.'" Id. (quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06, 557 N.E.2d 739, 741 (1990)).

To the extent Sherlock is basing her state law claims on Stancato's conduct during the first three encounters alleged in the Amended Complaint, those claims accrued more than three years before the plaintiff filed her claims. There is nothing in the Amended Complaint to suggest that Sherlock did not know or could not reasonably have known of any harm caused by Stancato's actions on the dates when the incidents occurred. Because Sherlock filed her lawsuit more than three years later, any such claims are untimely to the extent they have not been tolled.

### iii. Equitable Tolling

Both federal and state law provide for the tolling of limitations periods where the plaintiff lacks the mental competence to pursue her claims. Specifically, under federal law, the court may suspend the statute of limitations where the plaintiff can show that her "mental disability was so severe that the plaintiff was '[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel.'" Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 37 (1st Cir. 2001) (quoting Nunnally v. MacCausland, 996 F.2d 1, 5 (1st Cir. 1993)). Under the law of Massachusetts, "[i]f the person entitled thereto is . . . incapacitated by reason of mental

10

illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed." Mass. Gen. Laws ch. 260, § 7.

In the instant case, the record indicates that Sherlock was deemed to be incompetent to stand trial in February 2008, and committed to a mental health facility. (Def. Supp. Ex. D at 7). Moreover, as indicated in her initial complaint, Sherlock was residing in a psychiatric facility when she filed suit on February 26, 2010. At the very least, this raises a question of fact as to whether Sherlock's brief thirteen-day delay in filing her claims should be excused on the grounds of equitable tolling. Accordingly, this court declines to dismiss any of Sherlock's claims on the grounds of untimeliness.

### C. Failure to State a Claim Based on the First Three Encounters

Although Stancato has not shown that dismissal is warranted on statute of limitations grounds, this court finds that the Amended Complaint nevertheless fails to state a claim based on the first three encounters between the parties. Therefore, any claims arising out of those incidents will be dismissed on the merits.

In order to state a claim under Section 1983, the plaintiff must establish both that the defendant was "acting under color of state law" and that the conduct "worked a denial of rights secured by the Constitution and by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997), cert. denied, 522 U.S. 819, 118 S. Ct. 71, 139 L. Ed. 2d 32 (1997). While Sherlock has alleged facts showing that Stancato was acting under color of state law at all relevant times, her allegations regarding her brief interactions with the defen-

dant during the first two encounters between the parties do not support a claim for violation of her constitutional rights. There simply is nothing unconstitutional about the defendant's statement that he was watching Sherlock or about his conduct in pushing her and telling her not to return to Chinatown. See United States v. Ford, 548 F.3d 1, 3 (1st Cir. 2008) (explaining that "minimally instrusive interactions such as when police officers approach individuals on the street or in public places to ask questions" do not implicate the Fourth Amendment), cert. denied, 130 S. Ct. 54, 175 L. Ed. 2d 22 (2009); Cummings v. McIntire, 271 F.3d 341, 345 (1st Cir. 2001) (finding that police officer's hard shove and abusive language did not violate plaintiff's constitutional rights where conduct involved no "serious physical intrusions or sustained abuse").

To the extent Sherlock is claiming that her constitutional rights were violated because she was falsely arrested during the third encounter, any such claim must fail in light of her admission that she was drinking in public and that Stancato therefore had probable cause to believe she was committing a crime. See Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (explaining that probable cause exists "if the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information would suffice to warrant a prudent person in believing that a person has committed or is about to commit a crime" (quotations and citation omitted)). Accordingly, Sherlock has failed to state a Section 1983 claim based on her first three "run-ins" with the defendant, and any such claims will be dismissed.

To the extent Sherlock is attempting to base her state law claims for assault, emotional distress and slander on any of the first three encounters, those claims too will be dismissed. As an initial matter, Sherlock has not alleged any facts to suggest that Stancato's conduct during those incidents resulted in any injury or otherwise caused her harm. Additionally, the plaintiff has not alleged any facts showing that Stancato made any defamatory statements about her, that his conduct was extreme and outrageous, or that he attempted or threatened to cause her bodily harm. See Commonwealth v. Gorassi, 432 Mass. 244, 248, 733 N.E.2d 106, 110 (2000) (defining assault as an attempt or threat to do bodily harm); Sena v. Commonwealth, 417 Mass. 250, 263-64, 629, N.E.2d 986, 994 (1994) ("To sustain a claim of intentional infliction of emotional distress, a plaintiff must show ... that the defendant's conduct was extreme and outrageous" such that it was "beyond all bounds of decency and ... utterly intolerable in a civilized community" (quotations and citations omitted)); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429, 583 N.E.2d 228, 230 (1991) (in order to state a claim for slander, plaintiff must show that defendant made a defamatory statement which concerned the plaintiff). Therefore, she has failed to state any claims under state law arising from her first three encounters with Stancato.

### D. Claim for Deprivation of Property

Stancato argues that Sherlock's claim for deprivation of property should be dismissed because the plaintiff's allegations are insufficient to support a claim for relief. Specifically, he contends that the claim should be dismissed because Sherlock has not

13

specified when the police allegedly took control of her property, and because she has failed to indicate what if any steps she took to recover her possessions. This court finds that Sherlock's allegations, while somewhat vague, are sufficient to withstand Stancato's motion to dismiss.

By her amended complaint, Sherlock alleges that the police failed to return approximately $200 worth of her personal property, including clothing, cash, jewelry and makeup. She further asserts that she is seeking to hold Stancato liable for "stolen property." While it is somewhat unclear when the police took control of her possessions, her allegations suggest, and Sherlock has confirmed in her opposition, that her property was taken in connection with her arrest on March 1, 2007. Moreover, although Sherlock has not alleged what if any effort she made to retrieve her property, her characterization of the property as "stolen" indicates that it was unlawfully rather than inadvertently withheld.[6]

Under the liberal notice pleading requirements of Fed. R. Civ. P. 8(a), a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (quotations and citation omitted). When viewed liberally, Sherlock's allegations, while thin on detail, are sufficient to notify the defendant as to the

---

[6] In her opposition, Sherlock has further clarified her claim by describing her failed efforts to recover her property from the police station.

basis for her claim. Therefore, the defendant has not shown that Sherlock's claim for deprivation of property should be dismissed at this stage in the litigation.

## IV. **CONCLUSION**

For all the reasons detailed herein, the defendant's partial motion to dismiss (Docket Nos. 4 and 13) is ALLOWED IN PART and DENIED IN PART. Because Sherlock has failed to state a claim based on the circumstances surrounding the first three encounters between the parties, any causes of action arising out of those incidents shall be dismissed. However, Sherlock may pursue her claim for deprivation of property in addition to the remaining claims arising out of the fourth encounter between the parties on about March 1, 2007.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge